Roane, Judge.
Before I advert particularly to the circumstances of this case, I will lay down some principles which appear to be founded in reason, and sanctioned by respectable authority.
1. Those who would impeach any act on the ground of incompetency in the grantor (his general competency being presumed) must clearly prove that incompetency to exist, as at the time of executing the instrument in question.
2. A general incompetency being established to exist, any deed made thereafter, must, in order to be considered valid, be proved, by at least as strong testimony, to have been executed in an interval of competency. This doctrine laid down, in the books, as relative to a state of lunacy, which state always admits of lucid intervals, applies, a fortiori, with respect to a state of dotage, or superannuation. For *426 the latter rarely admits of intervals of superior sanity, but is generally equable and uniform.
3. That the evidence in such cases, as applying to stated intervals, ought to go to the state and habit of the person, and not to the accidental interview of an individual, or to the degree of self possession in any particular act.
I will test this case by the standard of these principles.
It is clearly proved, in the cause, by persons intimately acquainted with the testator, and who had daily an opportunity of judging of his state and habit, that he was, at a time anterior to the execution of his will, incompetent to make a distribution of his property. It is also in proof that the appellee Reuben Moore, was himself of the same opinion. It is not necessary to fix the precise origin of this general incapacity. Its being antecedent to the execution of the will in question is sufficient to impose on the appellee the necessity of establishing the existence of an interval of rationality in the satisfactory manner, which the position I have laid down seems to require.
But this particular fact is only proved by those who were not in the habit of visiting him, and had a very short interview with him : which interview, too, was attended with circumstances, which, independent of other proof, would render the conclusions they have drawn, in this respect, very questionable. This testimony, too, is confronted by strong testimony to shew that, at a very advanced stage of his debility of understanding, a slight observer might be deceived, and draw erroneous conclusions with respect to the state of his mental faculties. It is weakened, too, by the circumstance of the secrecy practised by the appellee Reuben Moore, and his calling upon persons to witness the will, who were not in the habit of seeing the testator generally, and who did not remain long enough with him at the time, in question, to enable them to form an accurate judgment on the subject. To say nothing of the admission of Wharton Randsdale in his letter to Petty, of November 20th, 1796, “ that it would be difficult for him to determine *427 whether the testator was possessed of his right mind or not.” There is nothing more clear, than that a will may be set aside or established by evidence contrary to, and in the mind of the court overruling, that of the attesting witnesses. The question of sanity, like other questions of fact, must be decided by the testimony which preponderates.
On the present occasion, I am very sanguine in declaring, that the testimony of the subscribing witnesses and other witnesses for the will, is insufficient to establish the competency of the testator on the 6th of October, 1793: and with respect to the auxiliary testimony in favour of the will, I will make one general remark, which is, that it is generally given by persons strangers to, or transiently seeing, the testator, and goes to particular acts of self possession, and not to his general state and habit.
With respect to the case of Beckwith and Butler, 1 Wash. 224, I am not particularly informed of the grounds and extent of the decision of this court thereupon. But I have looked into the record, and I find that the only subscribing witness to the deed of gift in question, who was examined, declares, that the grantor, sir Marmaduke Beck-with, came into a room, where the deponent, two other subscribing witnesses, and the grantee, Jonathan Beckwith, were, and desired his son to read the deed of gift to him j which he did. That sir Marmaduke Beckwith then rose up from his seat, and made his mark, desiring his son to write his name around it. That sir Marmaduke Beckwith acknowledged the deed and desired the witnesses to sign their names thereto, after which he left the room. The deponent further said, that he was long acquainted with the said sir Marmaduke; and that, upon that day, and at the time he executed the deed in question, he appeared to be as perfectly in his senses as ever he knew him, and entirely sober and unaffected with liquor.
The conduct of the grantor, it will be seen, was entirely different from that of the present testator in every circum *428 stance. The circumstances of the one exhibits a deed moving spontaneously and deliberately from the grantor. In the present case, the testator was an instrument in the hands of the appellee, and might have been made to effect almost any purpose. So that admitting that a prior incapacity was established to exist in the grantor in the case just quoted, as to which I have formed no opinion from the testimony, there was in that case much stronger evidence to shew an interval of rationality, as at the time of executing the deed, than can possibly be found to exist in the present case.
Upon the whole, I think the judgment of the district court must be reversed.
Carrington, Judge. Although old age is not, of itself, evidence of incapacity, (for a man a hundred years old may be very competent,) yet the general tenor of the testimony here, evinces the incapacity of the testator; and therefore I am of opinion that the judgment of the district court should be reversed.